# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH ZEMOLA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CARRINGTON TEA COMPANY, LLC, <br><br> Defendant. | Case No.: 17cv760-MMA (KSC) <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS IN SUBSTANTIAL PART;** <br><br> [Doc. No. 8] <br><br> **DENYING DEFENDANT'S MOTION TO STAY** <br><br> [Doc. No. 9] |

Plaintiffs Elizabeth Zemola and Matthew Beaumont bring this putative class action against Defendant Carrington Tea Company, LLC, based on the allegedly misleading marketing and labeling of Defendant's coconut oil products as "healthy." *See* Doc. No. 1. Defendant moves to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 12(b)(1). *See* Doc. No. 8. In the alternative, Defendant moves to stay these proceedings on the grounds that the United States Food and Drug Administration ("FDA") has announced that it is reconsidering the criteria and terms for an updated definition of "healthy." *See* Doc. No. 9. Plaintiffs oppose both motions. *See*

1

Doc. Nos. 11, 12. Defendant filed reply briefs in support of the motions. *See* Doc. Nos. 13, 14. The Court found the motions suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 15. For the reasons set forth below, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' claims in substantial part and **DENIES** Defendant's motion to stay these proceedings.

## BACKGROUND

Plaintiff Elizabeth Zemola is an individual residing in the Escondido, California. Plaintiff Matthew Beaumont is an individual residing in San Pedro, California. Defendant Carrington Tea Company, LLC is a New Jersey limited liability company with its principal place of business at 7 Reuten Drive, Building A, Closter, New Jersey, 07624. Plaintiffs allege that Defendant misleadingly and unlawfully markets its coconut oil products as inherently healthy. According to Plaintiffs, they relied upon Defendant's misleading marketing and labeling to purchase the products, and suffered damages as a result.

Plaintiffs assert that because of its high saturated fat content, the consumption of coconut oil increases the risk of cardiovascular heart disease and other morbidity. *See* Doc. No. 1, Complaint ("Compl.") ¶¶ 33-43. Plaintiffs rely on scientific claims that saturated fat consumption increases the risk of cardiovascular heart disease and other morbidity; that high total low density proteins (LDL) are associated with increased risk of morbidity, including coronary heart disease (CHD) and stroke; and that saturated fat consumption causes increased total and LDL blood cholesterol levels, which increase the risk of CHD and stroke. *Id.* ¶¶ 10-32. Plaintiffs cite to studies conducted by the United States Departments of Agriculture and Health and Human Services, and other journals for support.

As relevant here, Plaintiffs allege that Defendant has manufactured, distributed, marketed, and sold coconut oil products since 2012. *Id.* ¶ 44. Plaintiffs provide numerous examples of the products sold by Defendant, complete with product descriptions and images of the product containers. *Id.* ¶¶ 49-55. Plaintiffs then highlight

the nutritional composition of these products, noting that, "[e]ach [one] tablespoon . . . serving of [Carrington's] coconut oil . . . contains 130 calories, all of which come from fat . . . ." *Id.* ¶ 53.

Plaintiffs further allege that Defendant markets its coconut oil products with misleading health and wellness claims. *Id.* ¶¶ 57-64. Plaintiffs claim that consumers are generally willing to pay more for foods they perceive as being healthy or healthier than other alternatives. *Id.* ¶ 54. Plaintiffs allege that Defendant is aware of this customer behavior, and has employed a strategic marketing campaign intended to convince consumers that its products are healthy, despite that they are almost entirely composed of unhealthy saturated fat. *Id.* ¶ 55. Plaintiffs contend that Defendant markets its products as healthy, and its labeling claims are designed to conceal or distract consumers from noticing its high fat content. *Id.* ¶ 56. For example, Plaintiffs allege that Defendant's extra virgin coconut oil is actually unhealthy due to its high saturated fat content. *Id.* ¶ 60. Plaintiffs raise similar claims regarding Defendant's coconut cooking oil and the statements taken from Defendant's website, where the products may be purchased. *Id.* ¶¶ 64-77. Plaintiffs assert that totality of the labeling conveys a concrete message to a reasonable consumer that Defendant's coconut oil is healthy and a healthier alternative to other cooking oils. Plaintiffs allege that Defendant intended consumers to rely on this message, which is false and misleading. *Id.* ¶¶ 64, 72.

Based on these allegations, Plaintiffs bring causes of action against Defendant for violations of California's consumer protection laws, including the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, *id.* §§ 17500 *et seq*. ("FAL"). Plaintiffs further allege that Defendant breached express and implied warranties under California law.

On September 27, 2016, the United States Food and Drug Administration ("FDA") announced that it had initiated a public process to redefine the "healthy" nutrient content claim for food labeling as "part of an overall plan to provide consumers with information

3

and tools to enable them to easily and quickly make food choices consistent with public health recommendations and to encourage the development of healthier foods by the industry." FDA Constituent Update, *available at* https://www.fda.gov/Food/NewsEvents/ConstituentUpdates/ucm520703.htm (last visited 10/17/2017).

## **REQUEST FOR JUDICIAL NOTICE**

Defendant requests that the Court take judicial notice of documents extrinsic to Plaintiff's complaint. Specifically, Defendant requests that the Court take judicial notice of three articles published in academic journals regarding the health benefits of coconut oil. *See* Doc. No. 8-2, Def. RJN, Exs. 1-3. Plaintiffs oppose Defendant's request. *See* Doc. No. 11-1.

A court may take judicial notice of documents attached to or incorporated by reference into a complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). In addition, the Court may take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendant "does not request the Court to take judicial notice of the truth of the contents of these studies, only that such studies exist and contain conclusions that contradict Plaintiffs' allegations." *Id*. at 3.[1] Nonetheless, judicial notice is only appropriate if, among other things, "the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Regardless, the Court need not

---

[1] Citations to documents in the record refer to the pagination assigned by the CM/ECF system.

determine if judicial notice is appropriate in this case. The Court did not rely on the proffered documents in ruling on the instant motions. As such, the Court denies Defendant's request for judicial notice as moot.

# MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' claims based on lack of standing, failure to plead fraud with the requisite particularity, and general implausibility under the standards set forth in the Federal Rules of Civil Procedure.

### 1. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903,

908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

While a complaint need not contain detailed factual allegations to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), if a plaintiff's claims are "'grounded in fraud,'. . . Rule 9(b) applies to the whole of the complaint." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2014) ("Rule 9(b)'s heightened pleading standards apply equally to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud."). Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A sufficiently particular allegation of fraud must include the "who, what, when, where and how" of the circumstances giving rise to the claim. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The purpose of this heightened pleading requirement is to ensure that defendants accused of fraudulent conduct have adequate notice of the allegations so that they might defend against them. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1305 (S.D. Cal. 2003).

### 2. Analysis

#### a) Standing

As an initial matter, Defendant argues that Plaintiffs lack standing to assert claims related to products they did not purchase, as they cannot establish any injury with respect to those products. Plaintiffs' claims relate to Defendant's Extra Virgin Coconut Oil and

the Coconut Cooking Oil products, however Plaintiffs purchased only the Extra Virgin Coconut Oil.

In California, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Cortina v. Goya Foods, Inc.*, No. 14-CV-169-L NLS, 2015 WL 1411336, at *18 (S.D. Cal. Mar. 19, 2015) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (noting where composition of the product is less important, "cases turn on whether the alleged misrepresentations are sufficiently similar across product lines")). Here, Plaintiffs have standing because the composition of the products and the alleged misrepresentations are sufficiently similar.[2] The products' primary ingredient is coconut oil. The nutrition facts are nearly identical. And the alleged misrepresentations on each product include some variation on the "healthy" theme.

In addition, Defendant argues that Plaintiffs lack standing to sue for injunctive relief because they fail to allege that they would purchase the coconut oil products in the future. Resolving a split among district courts applying California's consumer protections laws, the Ninth Circuit recently addressed this issue in *Davidson v. Kimberly-Clark Corp.*, holding as follows:

> [A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase,

---

[2] Defendant also asserts that Plaintiffs lack standing to pursue any claims based on representations made on Defendant's website regarding the products at issue, because Plaintiffs fail to allege reliance upon those representations. The Court agrees that to the extent Plaintiffs' claims arise from representations made on Defendant's website, Plaintiffs have not sufficiently alleged actual reliance for the purpose of standing. *See Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA (JMA), 2015 WL 1841231, at *4 (S.D. Cal. March 20, 2015) (finding that plaintiff lacked standing to pursue consumer protections claims based on website representations upon which plaintiff did not actually rely). However, as discussed *supra*, Plaintiffs' purchase of the coconut oil product, and the similarity of the two products at issue, provides them with standing to bring their claims.

> because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. *Summers*, 555 U.S. at 493. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

*Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2017 U.S. App. LEXIS 20670, at *24-25 (9th Cir. Oct. 20, 2017).

In *Davidson*, the Ninth Circuit relied on the plaintiff's particular allegation "that she desires to purchase Kimberly-Clark's flushable wipes," "based on her belief that 'it would be easier and more sanitary to flush the wipes than to dispose of them in the garbage.'" *Davidson*, 2017 U.S. App. LEXIS 20670, at *28. Thus, the plaintiff specifically alleged a present desire to purchase the product at issue. In this case, Plaintiffs allege that "[a]t the time of purchase, plaintiffs were unaware that consuming coconut oil, such as Carrington's, adversely affects blood cholesterol levels and increases risk of CHD, stroke, and other morbidity." Compl. ¶ 117. In support of their request for injunctive relief, Plaintiffs claim that they "are likely to continue to be damaged by Carrington's deceptive trade practices, because Carrington continues to disseminate misleading information." *Id.* ¶ 146. However, Plaintiffs do not allege that they desire to purchase the coconut oil products in the future, and claim that "[b]y consuming Carrington Farms Extra Virgin Coconut Oil, plaintiffs and other members of the class experienced detrimental effects to their blood cholesterol levels and suffered impaired arterial endothelial function." *Id.* ¶ 116. As such, the Court finds that even under the newly clarified standards set forth in *Davidson*, Plaintiffs' allegations are insufficient to confer standing to seek prospective injunctive relief.

///
///
///

b) Sufficiency of Plaintiffs' Claims

Defendant seeks dismissal of Plaintiff consumer protections claims as insufficiently pleaded under Rules 12(b)(6) and (9)(b).[3] Defendant argues that Plaintiffs fail to plausibly allege that a reasonable consumer is likely to be deceived by representations made on Defendant's coconut oil products. Defendant points out that the label contains accurate nutrition facts, which clearly indicate that the products are made up of 100% fat. Defendant further contends that Plaintiffs fail to adequately plead that their reliance on the alleged misrepresentations caused them to purchase the coconut oil product, and Plaintiffs' allegations regarding technical violations of applicable FDA regulations cannot support Plaintiffs' claims. Defendant also argues that Plaintiffs fail to plausibly allege that the representations on the coconut oil products are in fact false. For all these reasons, Defendant argues that Plaintiffs' consumer protection claims are subject to dismissal.

Plaintiffs' consumer protections claims are sufficiently pleaded under Rules 12(b)(6) and 9(b). In order to state a claim under the relevant consumer protection laws, a plaintiff must plead that "members of the public are likely to be deceived" by a defendant's representations. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs allege, *inter alia*, that "the totality of the labeling" on Defendant's coconut oil products "conveys the concrete message to a reasonable consumer" that the products are "healthy, and a more healthful alternative to canola, soybean, vegetable, olive oil, and butter. Carrington intended consumers to rely upon this message, which is false and misleading for the reasons stated herein." Compl. ¶ 72. Plaintiffs extensively allege that Defendant's representations are misleading and/or false, point to specific representations, state why they believe the representations are misleading and false, and

---

[3] California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code. § 17200. The FAL prohibits any "unfair, deceptive, untrue or misleading advertising," *id*. § 17500, and the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

claim they relied upon those representations when choosing to purchase the product. *See, e.g.*, Compl. ¶¶ 55, 56, 58-62, 66-70, 111, 112. Defendant may disagree with Plaintiffs' allegations as a factual matter, but at this juncture, the Court must accept those allegations as true.

Likewise, Plaintiffs sufficiently plead that Defendant has engaged in unfair and unlawful business practices. "The UCL prohibits unfair competition, which it broadly defines as including 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code § 17200). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact" and unsuited for dismissal at the pleading stage. *Williams*, 552 F.3d at 939 (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (2007)). Plaintiffs' allegations, as discussed above, satisfy the "unfair" prong, while the allegations concerning Defendant's purported mislabeling and technical violations of FDA regulations are sufficient to satisfy the "unlawful" prong of the UCL.

Plaintiffs have also brought plausible warranty claims against Defendant based on the representations made by Defendant on its coconut oil products. "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986); *see also* Cal. Comm. Code § 2313(1)(a). The implied warranty of merchantability is violated if a product does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2); *see Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code § 2314(2)(c), (f)). As noted above, Plaintiffs plausibly allege reliance and causation with respect to Defendant's representations regarding the healthfulness of the coconut oil products. Plaintiffs also more specifically allege that Defendant "made affirmations of fact or

promises, or description of goods, that, *inter alia*, the product is "healthy," and "breached its express warranties by selling a product that is not healthy, not healthier than butter or other oils, and that negatively affects cholesterol levels, increasing risk of CHD, stroke, and other morbidity." Compl. ¶¶ 170-71. Plaintiffs further allege that Defendant "breached [the] implied warranty in that Carrington Farms Coconut Oil Products are not healthy, not healthier than butter or other oils, and negatively affect cholesterol levels, increasing risk of CHD and stroke, as set forth in detail herein." *Id*. ¶ 177. These allegations are sufficient to state plausible warranty claims under California law.

Finally, Defendant argues that Plaintiffs fail to allege any injury, and "Plaintiffs have not alleged—and cannot formulate—an appropriate or plausible method of calculating damages under their causes of action, their claims should be dismissed." Doc. No. 8-1 at 20. However, federal pleading standards do not require Plaintiffs to set forth a specific methodology for calculating damages. *See* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."). Furthermore, "[u]nder California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson*, *supra*, 2017 U.S. App. LEXIS 20670, at *16-17. Plaintiffs allege that "[t]he Carrington Farms Coconut Oil Products cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements;" "Plaintiffs paid more for the Carrington Farms Extra Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein; "Carrington Farms Extra Virgin Coconut Oil was worth less than what plaintiffs paid for it;" and "Plaintiffs lost money as a result of Carrington's deceptive claims and practices in that they did not receive what they paid for when purchasing Carrington Farms Extra Virgin Coconut Oil." *See* Compl. ¶¶ 120-22, 124. Based on these allegations, Plaintiffs have sufficiently pleaded that they suffered an injury and resulting damages based on the purchase of Defendant's product.

### 3. Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss in substantial part. However, the Court finds that Plaintiffs fail to sufficiently allege standing to seek prospective injunctive relief. Plaintiffs may file an amended complaint that cures this deficiency on or before **November 9, 2017**. *See Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (holding that "leave shall be freely given when justice so requires.") (citing Fed. R. Civ. P. 15).

## MOTION TO STAY

As an alternative to dismissal, Defendant moves to stay this action under the primary jurisdiction doctrine pending the FDA's reconsideration of the definition of the term "healthy" in the labeling of food products.

### 1. Legal Standard

Under the primary jurisdiction doctrine, district courts may stay proceedings "pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). This doctrine applies if four factors are met: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* at 1115. The Ninth Circuit has emphasized that this doctrine applies "in a limited set of circumstances" and is to be used sparingly. *Id.* at 1114. "Primary jurisdiction is not a doctrine that implicates the subject matter jurisdiction of the federal courts. Rather, it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

### 2. Analysis

Defendant argues that the FDA's reconsideration of the definition of the term

"healthy" in the labeling of food products "will provide guidance, if not clear disposition, of the issues raised by Plaintiffs' Complaint." Doc. No. 9 at 1. Defendant relies for support upon two recent Ninth Circuit rulings, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d (9th Cir. 2015), and *Kane v. Chobani, LLC*, 645 F. App'x 593 (9th Cir. 2016).[4] In both of these deceptive labeling cases, the circuit court remanded with instructions to the district court to stay the proceedings based on the primary jurisdiction doctrine, pending the outcome of further FDA studies and regulations. Plaintiffs argue that unlike *Astiana* and *Kane*, the FDA proceedings regarding reconsideration of how to define the term "healthy" are insufficient to grant a stay of these proceedings. The Court agrees, and finds the *Astiana* and *Kane* cases distinguishable from the case at bar.

The plaintiffs in *Astiana* brought a putative nationwide class action against a cosmetic products manufacturer alleging that the manufacturer's use of the word "natural" on its products was false and misleading because its products contained synthetic and artificial ingredients. After invoking the primary jurisdiction doctrine, the district court dismissed the action. On appeal, the Ninth Circuit determined that while the district court erred in dismissing the action, it properly invoked primary jurisdiction and should have stayed the proceedings. *Astiana*, *supra*, 783 F.3d 753. In concluding that a stay was appropriate upon remand, the circuit court reasoned that "determining what chemical compounds may be advertised as natural on cosmetic product labels" was a "particularly complicated issue that Congress has committed to the FDA." *Id*. at 761 (internal quotations omitted).

In *Kane*, *supra*, buyers of fruit-flavored Greek yogurt brought a putative class action against the manufacturer, alleging that labels and advertising violated California's consumer remedies laws. After analyzing the merits of the plaintiffs' claims, the district court granted the defendant's motion to dismiss. On appeal, the Ninth Circuit reversed,

---

[4] Pursuant to Federal Rule of Appellate Procedure 32.1 and Ninth Circuit Rule 36-3, unpublished dispositions are not precedential, but may be cited to if issued after January 1, 2007.

and remanded with instructions for the district court to stay the action pending delineation by the FDA of the scope and permissible usage of the terms "natural" and "evaporated cane juice" in connection with food products based on "technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Kane*, 645 F. App'x at 594 (citing *Astiana*, 783 F.3d at 760 (quoting *Clark*, 523 F.3d at 1114)).

Here, unlike in the *Astiana* case, the FDA is not considering an issue of first impression. The FDA has current and enforceable regulations governing the use of the term "healthy" and related terms. The terms may continue to be used by food manufacturers provided they meet other nutritional guidelines. *See, e.g.,* 21 C.F.R. 101.65(d)(2) (setting forth the requisite nutrient requirements in particular foods in order to label a food "healthy" or some related term). While the FDA is considering whether to redefine the term "healthy" as a nutrient content claim, food manufacturers will continue to use the term "healthy" on foods that meet the current regulatory definition. Furthermore, the FDA has published guidance on the use of the term "healthy" in food labeling, and announced that it would continue to enforce existing regulations. *See* "Use of the Term "Healthy" in the Labeling of Human Food Products: Guidance for Industry," *available at* https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/ucm521690.htm (last visited 10/17/2017). In the interim, it is not beyond the competency of this Court to adjudicate Plaintiffs' mislabeling claims as to the products at issue.

Additionally, the Court notes that it "must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims. The primary jurisdiction doctrine is rooted in part in judicial efficiency." *Reid v. Johnson & Johnson,* 780 F.3d 952, 967–68 (9th Cir. 2015); *United States v. Philip Morris USA Inc.,* 686 F.3d 832, 838 (D.C. Cir. 2012). Under Ninth Circuit precedent, "efficiency" is the "deciding factor" in whether to invoke primary jurisdiction. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007). The relevant FDA proceedings are nascent and unlikely to be

14

17cv760-MMA (KSC)

finalized within a reasonable time. *See, e.g., Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO, 2017 U.S. Dist. LEXIS 84359, at *62-63 (N.D. Cal. June 1, 2017) (declining to invoke primary jurisdiction in a "high sugar cereal" deceptive labeling case on the grounds that "the FDA has very recently opened the discussion over whether and how to revise a specific nutrient claim guideline for 'healthy' claims," and noting that "[t]here is no evidence that final action (or any further clarification as to the scope of the FDA's review of the regulation at issue) is imminent."). The FDA has not published an expected study completion date, nor has it committed to making any changes to the respective regulation.

Finally, Defendant notes in its contemporaneously filed motion to dismiss that "Plaintiffs' same counsel herein has effectively declared war on coconut oil, asserting nearly identical allegations and claims against coconut oil manufacturers in at least seven other cases." Doc. No. 8-1 at 1, n.1 (citing, *inter alia*, *Jones v. Nutiva, Inc.*, Case No. 3:16-cv-00711 (N.D. Cal.); *Boswell v. Costco Wholesale Corp.*, Case No. 8:16-cv-00278 (C.D. Cal.); *Hunter v. Nature's Way Products, LLC*, Case No. 3:16-cv-00532 (S.D. Cal.); *Boulton v. Carrington Tea Company, LLC*, Case No. 2:16-cv-01740 (C.D. Cal.); *Tracton v. Viva Labs, Inc.*, Case No. 3:16-cv-02772-BTM (S.D. Cal.). These cases are being actively litigated in federal court, and have not been stayed pending the FDA's reconsideration of the term "healthy." The Court finds that the instant case should likewise proceed.

### 3. *Conclusion*

Based on the foregoing, the Court **DENIES** Defendant's motion to stay these proceedings pending the FDA's reconsideration of the definition of the term "healthy" in the labeling of food products.

///
///
///
///

## CONCLUSION

In sum, the Court **DENIES** Defendant's motion to dismiss in substantial part. Plaintiffs may file an amended complaint that cures the deficiency with respect to the prayer for prospective injunctive relief on or before **November 9, 2017**. Additionally, the Court **DENIES** Defendant's motion to stay these proceedings.

**IT IS SO ORDERED**.

DATE: October 27, 2017

_/s/ Michael M. Anello_
HON. MICHAEL M. ANELLO
United States District Judge